[No. 1757.]

## DUNCAN v. BURCHINELL.

1. EXEMPTIONS.

Where property about to be levied upon is absolutely exempt, it is not necessary for the debtor to claim his exemption, but the officer must know the fact and if he levy upon such property, he is a trespasser.

2. EXEMPTIONS—FOOD FOR EXEMPT WORK ANIMALS.

Where a debtor has work animals exempt by law from execution and has on hand no more than enough food for such animals for six months, an officer levying an attachment on such food is bound to know that it is exempt, and the debtor is not required to claim his exemption at the time. But where the levy was made in the presence of the debtor and he inquired of the officer if he had a bond, and being answered in the affirmative he told the officer to go ahead, such statement of the debtor warranted the sheriff in proceeding, and in making the levy he was not a trespasser.

3. EXEMPTIONS—DEMAND FOR RETURN OF EXEMPT PROPERTY—LIA-
    BILITY OF OFFICER.

Where an officer levies an attachment upon exempt property, but where
    he is not chargeable as a trespasser, the debtor if he desires to as-
    sert his right of exemption, may within a reasonable time claim his
    exemption and demand the return of the property.· Where such
    demand is made within a reasonable time, it is the duty of the offi-
    cer within a reasonable time to return the property, and what is a
    reasonable time within which the officer must return the property
    is a question for the jury to determine. And where after such de-
    mand a reasonable time is allowed the officer to return the property
    before beginning against him an action for the statutory penalty,
    he cannot after the commencement of the action relieve himself of
    liability by returning the property.

4. EXEMPTIONS—LIABILITY OF OFFICER—RETURN OF PROPERTY.

Where the liability of an officer had accrued for levying upon exempt
    property and failing to return the same within a reasonable time
    after demand, and an action was commenced against him for three
    times the value, the fact that the property was returned after the
    right of action accrued, even though it was appropriated by the ex-
    emption claimant, would not release the officer from his statutory
    liability, but would only reduce the liability the amount of the value
    of the property.

*Error to the County Court of Arapahoe County.*

Mr. CHAS. H. DYETT and Mr. J. W. HORNER, for plaintiff
in error.

Mr. HUGH BUTLER, for defendant in error.

THOMSON, J.

On the 24th day of November, 1894, William K. Burchi-
nell, as sheriff of Arapahoe county, by virtue of a writ of
attachment issued in a suit against William Duncan and
another, then pending in the county court of that county, at-
tached and took into his possession fifty-one sacks of oats, the
property of William Duncan. Duncan was present when the
property was taken, and service of the writ was made upon
him at that time. When the officer communicated his pur-
pose to Mr. Duncan, the latter asked him if he had a bond,

and upon his replying that he had, said, " All right, go ahead."
The sheriff then took the property and removed it from the
premises.   Two days afterwards, Duncan served Burchinell
with a written notice that he claimed the property taken, as
exempt from levy under the writ, and that unless it was re-
turned within forty-eight hours, he would bring suit for three
times its value, pursuant to the statute.   The notice was
served by Duncan himself, and, upon receiving it, Mr. Burch-
inell said that unless he was furnished with a good and suf-
ficient bond, he would have to return the oats.   Four days
afterwards, the attachment plaintiff furnished the sheriff with
an indemnifying bond, and the demand for the return of the
property was, for the time being, disregarded.   This action
is against Burchinell for the recovery of three times the value
of the property.   It was brought on the 4th day of December,
1894, before a justice of the peace.   On the 11th day of De-
cember, the defendant brought the oats back and offered them
to the plaintiff, but the latter refused to receive them, and
they were left under a shed near his house.   On the 12th day
of December, the defendant paid the costs which had accrued
in the attachment suit.   On the 14th, this cause was tried, and
judgment rendered for the defendant.   The plaintiff made
his appeal to the county court, where a trial without a jury
resulted in a judgment for the plaintiff.   By agreement of
parties, this judgment was vacated and a new trial ordered.
The cause was then tried in the presence of a jury, and after
the evidence on both sides was heard, the court directed the
jury to find for the defendant, and they returned their ver-
dict accordingly.   Sometime after the oats were placed in the
shed, but when is uncertain, they were removed and put into
the plaintiff's granary.

The direction of a verdict by the court gives rise to the
only important questions in the case.   It is provided in our
statute concerning exemptions, that working animals to the
value of $200, when owned by any person being the head of
a family, as well as the necessary food for such animals for
six months, shall be exempt from levy and sale upon any ex-

ecution, writ of attachment or distress for rent. Gen. Stats. sec. 1865. The statute also contains the following provision: "If any officer or other person, by virtue of any execution or other process, or by any right of distress, shall take or seize any of the articles of property hereinabove exempted from levy or sale, such officer or person shall be liable to the party injured for three times the value of the property illegally taken or seized, to be recovered by action of trespass, with costs of suit." Gen. Stat. sec. 1868. The evidence was that the plaintiff was the head of a family; that he was the owner of certain working animals; that the value of these animals did not exceed $200; and that the oats in question, together with all the other food that he had, was not more than sufficient to supply the animals for six months. It has been held by our supreme court that as to property, which by law is absolutely exempt from liability, it is unnecessary for the debtor to claim it as exempt; that the officer is bound to know that the property is exempt; that it is his duty to leave it with the debtor; and that under such circumstances the seizure of it is a trespass. *Harrington v. Smith*, 14 Colo. 376. In that case the levy was made in the absence of the debtor and without his knowledge, so that there was not, and could not have been, any waiver of his rights. This case resembles that, in the fact that the officer took property which it was his duty to know was exempt, but it is unlike that, in the fact that the seizure was made in the presence of the debtor. If the latter had stood by and said nothing, what the effect of his silence would have been it is unnecessary to decide, for he was not silent. After ascertaining that an attachment bond had been given, he told the officer to go ahead. Whether his language might be regarded as a waiver of his exemption claim, is a question which counsel have not discussed and upon which, therefore, we express no opinion; but we feel certain of this, at least, that it warranted the officer in proceeding, so that in taking the property he was not a trespasser. The sheriff's act not being unlawful, it was incumbent upon the attachment defendant, if he proposed to assert his right

to the property, to make formal demand for its return, and this he did two days afterwards. It then became the duty of the sheriff to return the property to him within a reasonable time. *Madera v. Holdridge*, 4 Colo. App. 126. He did attempt to return it and did return it, in so far as he could return it at all, one week after this action was commenced. The sheriff was not bound by the time limited in the notice, but if a reasonable time had elapsed before the suit was brought, then at the commencement of the action his liability was fixed, and any attempt to make the return afterwards, unless with the concurrence of the debtor, would not relieve him from responsibility. If, however, a reasonable time had not elapsed, the action was commenced prematurely.

But it is argued that the duty to return the property must be equivalent to, and commensurate with, the right of the debtor to claim his exemption; and that when the claim is not made at the time of the levy, it must be made within a reasonable time afterwards, that is to say, according to the greater number of the adjudications, at any time before the sale of the property under the execution. The conclusion reached may be best expressed in the language of counsel:

"If, according to the authorities referred to, the appellant had the right to demand a return of the property before the sale (and this doctrine seems to have been concurred in, in *Harrington v. Smith*, 14 Colo. 38), it follows that the sheriff had an equivalent right to stop proceedings under the execution before sale, and to return the property to the judgment debtor."

Respecting the time within which the claim must be made the decisions vary, and the variance is occasioned by differences in the statutory provisions construed. The cases are collected, and the situation clearly outlined, in 12 American & English Encyclopaedia of Law (2d ed.) 226, *et seq.* Decisions upon statutes dissimiliar to our own, are not of much assistance to us. Our statute does not, in terms, make it incumbent upon the debtor to claim an exemption at all, but where the officer is not chargeable with knowledge of

the debtor's right to retain any specific property, and makes the levy in good faith, upon settled principles, in order that the duty of returning the property taken, may be cast upon the sheriff, demand must be made for it. In the absence of any statutory direction on the subject, the demand must be made within a reasonable time after the levy, and what, in a given case, is a reasonable time, is determinable from the facts and circumstances of that case. The right to make the claim may be waived, and the waiver may be evidenced by conduct as well as words. We think that circumstances might exist which would render it dangerous for the debtor, after knowledge of the seizure, to remain needlessly inactive, while the expenses incident to the custody of the property were accumulating. We hardly believe that after knowingly and unnecessarily allowing costs to accrue, which, if the property be released, the creditor must pay, the debtor could successfully assert his claim. We are not prepared to say that the general statement of counsel that the duty of the officer to return the property is equivalent to, and commensurate with, the right of the debtor to claim his exemption, is objectionable. No duty towards the debtor rests upon the officer, until after the claim is made. But as the claim must be made in a reasonable time, an equivalent duty rests upon the officer to make the return in a reasonable time. If the claim be not made until immediately before the sale, the officer discharges his duty by stopping the sale, and returning the property then; but a statement that when the demand is made, as in this case, immediately after the levy, the officer can wait until the time of sale, and then protect himself by a return, is not in harmony with doctrines announced in analogous cases, and involves, moreover, an inconsistency which mars its meaning. When the demand is made, the right accrues, and the duty arises. If the officer acknowledge the debtor's right, there will be no sale. If there can be a delay until the time of an event which will never happen, there may never be a return. On the other hand, proceeding towards a sale, notwithstanding the demand, would be a

denial of the right, and a refusal to make return. It seems manifest to us that, upon receipt of the notice of the claim, it is the duty of the officer, provided always that the claim is lawful, to stop all further proceedings against the property, and return it in a reasonable time.

Whether the defendant should have returned the property prior to the bringing of this suit was a question to be determined by the jury under the instructions of the court. Unless there were circumstances, undisclosed by the record, which justified further delay, eight days would seem to be ample time for action, but whether it was or not, was for the jury to say. Two days after the notice was given, the attachment creditor, E. L. Oakes, executed a bond to the defendant, requiring him to retain the property, and agreeing to indemnify him against any liability he might incur by refusing to deliver it. A natural inference from the action of Mr. Oakes would be that he did not intend to permit a return of the property, although his purpose may have been only to preserve its status until he had time for the investigation which he afterwards made. It appears that there was some doubt whether the plaintiff, or J. M. Duncan, who was sued jointly with him, was the owner of the oats. The latter was the former's son, and was unmarried. The two lived together. If the oats were the property of J. M. Duncan, they were not exempt. As a joint liability was asserted against the father and son, the question of the ownership of the oats was one of some importance. Mr Oakes finely satisfied himself that they belonged to the plaintiff, and directed their return. But he took his first step towards an investigation on the 4th day of December, the day this suit was brought. There is nothing to show that what he did after that day could not as well have been done before. There may have been valid reasons for the delay, but if there were, the record does not disclose them.

When the oats were brought back, the plaintiff refused to receive them. They were left under a shed, and, sometime afterwards, were removed to the plaintiff's granary. The

testimony was that on account of the bad condition of the sacks which contained them, they were wasting, and that they were put into the granary to preserve them. It does not appear that the plaintiff ever used them. But if the statutory liability against the defendant had accrued when the action was begun, we do not conceive that even if there was an appropriation of the oats by the plaintiff, the defendant was thereby released. If there was a liability against the defendant at all, it was fixed before the oats were brought back, and it was for three times their value. Their acceptance by the plaintiff might be shown in reduction of the amount of liability, but not in satisfaction of the claim.

It is plain that the case was not very closely tried. It is probable that important facts might have been elicited, which were not. The counsel who now appears for the defendant in error had nothing to do with the trial. He was not then connected with the case. If he had been, it is safe to suppose that the record would not be in quite its present condition. Upon the history of the case, which the record presents, we have no hesitation in saying that the facts should have been submitted to the jury, and that the court, in directing a verdict, and thus substituting its judgment for theirs, erred.

The judgment is reversed.

*Reversed.*